## Berry v. Harrison, et al.

(Decided September 19, 1919.)

### Appeal from Nicholas Circuit Court.

Appeal and Error—Finding of ιChancellor.—This court, upon issues of fact in equity cases, will adopt the finding of the trial court if the evidence creates only a doubt as to the truth of the matter, and will not reverse such finding unless the evidence preponderates against it.

CONLEY & McCARTNEY for appellant.

HOLMES & ROSS, F. V. COX and E. M. DICKSON for appellees.

Opinion of the Court by Judge Thomas—Affirming.

About September 1, 1914, appellant J. M. Berry, who was plaintiff below, and E. B. Bowen, as partners engaged

in the automobile business in Carlisle, Kentucky, and established a garage under the firm name and style of "Main Street Garage." They continued to operate the business under the firm name until about March 25, 1916, when plaintiff bought the interest of his partner Bowen, and within about three days thereafter he began negotiations to sell a one-half interest therein to appellee, Joe Harrison, who with his father, J. W. Harrison, were defendants below, which negotiations resulted in a sale of the half interest to defendant Joe Harrison, on April 1, 1916, the consideration paid being $1,383.00. After that purchase the name of the partnership was changed to that of Berry-Harrison Garage Company, in which name the partnership was operated until about June 1, 1916, when there was an effort made to incorporate it in the partnership name. The articles as subscribed show that J. M. Berry took fifty shares, Joe Harrison forty shares and J. W. Harrison ten shares, although the latter never subscribed to the articles, nor did any one ever receive any stock. Neither was there any corporate action taken, further than to subscribe the articles of incorporation.

On August 16, 1916, plaintiff sold his one-half interest in what was supposed to be the corporation, but in reality only a partnership, to defendants, Joe and J. W. Harrison. This contract was in writing, and recites in substance that plaintiff sold all of his interest in consideration of $850.00 and a one-half interest in the Hupmobile agency which the partnership held at that time, the Harrisons agreeing to assume and pay all of the indebtedness of the Berry-Harrison Garage Company and to receive all of its assets. The outstanding accounts due the firm amounted to about $780.00, while the indebtedness consisted of an overdraft to the Morefield Bank of something like $892.00, a note to that bank for $721.00, another note to Evans Berry for about $277.00, and several notes to the First National Bank of Carlisle, aggregating $2,635.00, which were consolidated by plaintiff Berry on the morning of April 1, 1916, into one note for the aggregated amount.

This suit was filed by plaintiff against defendants on November 21, 1916, upon the contract of August 16, 1916, alleging that defendants had failed and refused to comply with it by either paying or satisfying the indebtedness to the First National Bank and the Evans Berry note of $277.00, and praying judgment against them for a speci-

fic performance of the contract by requiring them to relieve plaintiff of all liability on the two notes, but if that relief could not be obtained he asked judgment against them for the respective amounts.

The answer filed by defendants admitted that under the contract they were to pay the Evans Berry note, which they alleged had been done, but they denied that they agreed to assume or did in any manner assume the payment of the debt to the First National Bank of $2,-635.00; that it was never mentioned in the negotiations leading up to their purchase of plaintiff's interest in the partnership; that they had never heard of it until long after that trade when he made demand of them to pay it, and that in such negotiations he had fraudulently concealed that debt from them.

Subsequently an amended petition was filed, seeking to collect the note of $850.00 which was executed by defendants to plaintiff as a part of the consideration of the latter's interest. To this amended petition defendants pleaded a counter-claim consisting of a number of items aggregating something over $500.00. Appropriate pleadings made the issue, and after extensive preparation the court dismissed plaintiff's petition in so far as it sought to charge defendants with the First National Bank debt, but gave judgment in his favor for the balance of the $850.00 note, less credits allowed amounting to $445.43, and complaining of that judgment plaintiff prosecutes this appeal.

It will thus be seen that there are only two questions involved, they being whether the court was correct in determining the issue as to defendants' assumption of the First National Bank debt, and the allowance of the items mentioned in the counterclaim as a credit on the $850.00 note. To support his contention plaintiff testified that defendant, Joe Harrison, who was a young man at that time, scarcely twenty-one years of age, had worked in the garage at different times prior to April 1, 1916, when he bought his one-half interest, and that he was familiar with the assets as well as the liabilities of the concern and must have known of the debt to the First National Bank; that when plaintiff bought Bowen's interest an invoice was made of all of the assets and liabilities, in which was included the First National Bank debt, and that he sold to Joe Harrison on April 1, 1916, a one-half interest based upon the figures of the Berry-Bowen invoice; that on several oc-

casions before August 16, 1916, he conversed with defendants about the payment of the debt in question and that they discussed ways and means by which it could be met. He introduced the cashier of the Morefield bank, who said that on or about August 26, 1916, after defendants had satisfied the debts due that bank which the partnership owed at the time of the purchase, defendant, J. W. Harrison, asked witness to see plaintiff and the officers of the First National Bank of Carlisle and ask them to carry that debt as long as possible without pushing it to collection so that defendants might meet it by the sale of automobiles. Another witness for plaintiff testified that J. W. Harrison, after the date of the contract in question, in conversation referred to the First National Bank debt as being a liability against the partnership. Opposing this testimony, each of the defendants testified that they never knew of the existence of the First National Bank debt until as much or more than ten days after they executed the contract sued on. They further deny that Joe Harrison purchased his one-half interest on April 1, 1916, from the invoice made by plaintiff when he bought Bowen's interest, but that the purchase then made was by an invoice taken on the 29th and 30th of March by plaintiff and defendants, and that in taking that invoice nothing was said about the First National Bank debt. They prove, also, by another witness, that while the latter invoice was being taken witness was present and it was entered on the same kind of paper testified to by defendants, and which invoice was introduced on the trial. It furthermore appears that the invoice taken by plaintiff when he purchased the half interest of Bowen showed that the partnership was indebted more than all of its assets in the sum of $22.14, and this, too, when the amount put into the partnership by Bowen and Harrison of $2,011.00 was duplicated in that invoice, which included as assets of the firm not only that amount but the stock purchased with it.

Still another witness testified that he was present when the question of paying the First National Bank debt was mentioned to defendants and that they each denied liability therefor. J. W. Harrison also denied the conversation attributed to him by one of the witnesses with reference to the debt in question. So then the issue is in extreme doubt if rested alone upon the express testimony of the witnesses. However, there are a number of circumstances which largely militate against the contention

of the plaintiff and correspondingly substantiate that of the defendants.

As we have heretofore seen, the invoice by which plaintiff claims to have sold the one-half interest to Joe Harrison on April 1, 1916, showed the partnership indebtedness to be $22.14 above all assets. Its good will was manifestly worthless, since during the two years of its existence its operation had resulted in actual loss. Under the circumstances it would be almost inconceivable that one would pay $1,383.00 for a one-half interest in it. If, however, the $2,635.00 indebtedness in dispute were not included in the liabilities, the $1,383.00 paid by Joe Harrison would be practically one-half of the book value of the partnership's assets. The plaintiff is contradicted by written evidence in a number of material and vital points upon which he testifies. For instance, he says that he put the $1,383.00 paid to him by Joe Harrison to the credit of the partnership and it remained there, but it is shown by the records of the bank where the account was kept that that much money was later checked out by Berry, who issued checks for the firm, and so far as the record shows it was appropriated to his personal use. According to his contention at that time he was to put into the partnership as an offset to the $1,383.00 paid by Joe Harrison a new Hupmobile and a new motorcycle, but the record fails to convince us that he did either. A number of other collateral facts throwing light upon the main issue appear in the record as contradicting the theory of plaintiff, but it would serve no useful purpose to go into an investigation or an analysis of them. A number of items composing the counterclaim asserted against the $850.00 note which defendants executed on August 16, 1916, were admitted by plaintiff, and the evidence as to those disputed but which the court allowed, is at least contradictory. One of such items is $100.00, being one-half of $200.00 which plaintiff paid to Bowen in the purchase of his one-half interest, which was paid by him with a check on the firm after Joe Harrison purchased a one-half interest, plaintiff claiming that this sum was assumed by Joe Harrison, but which the proof shows was not correct.

To our minds this case is clearly one coming within the well-established rule of this court that on appeal in equity cases if the mind is in doubt as to the truth of an issue of fact, the judgment of the chancellor disposing of it must be adopted. In such cases it is only when the

evidence preponderates against the finding of the chancellor that his judgment will be reversed by this court. Upon no issue of fact involved in this case do we find any preponderance of evidence against the finding of the chancellor, and his judgment will have to be and it is affirmed.